UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CALVARY BROKERAGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:22-CV-356-TAV-JEM |
| | ) | |
| ROBERT JONES and RLJ INDUSTRIES, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02, as well as referral of District Judge Thomas A. Varlan [Doc. 39].

Now before the Court is Plaintiff's Renewed Motion for Damages, Attorney's Fees, and Costs [Doc. 36]. For the reasons below, the undersigned **RECOMMENDS** that the Court **GRANT IN PART** and **DENY IN PART** Plaintiff's motion [**Doc. 36**].

## I. BACKGROUND[1]

Plaintiff was a limited liability company that provided freight hauling and freight brokerage services [Doc. 1 ¶ 8]. Defendant Robert Jones is an individual who worked for Plaintiff "as an independent contractor" [*Id.* ¶¶ 2, 18]. Defendant RLJ Industries ("Defendant RLJ") is an Ohio business [*Id.* ¶ 3].

Plaintiff commenced this action on October 7, 2022, against Defendants for a violation of the Lanham Act, 15 U.S.C. §§ 1116(a)(1)(A)–(B), violation of the Tennessee Trademark Act of 2000, Tenn. Code Ann. § 47-25-501 *et seq.*, violation of the Tennessee Consumer Protections Act ("TCPA"), Tenn. Code Ann. § 47-18-104, tortious interference with business relations, tortious

---

[1] Judge Varlan set forth the complete background in his Memorandum Opinion and Order [Doc. 35].

interference with contracts, interference with prospective economic advantage, and conversion [*Id.* at 5–13].

Following commencement of this action, the Court granted Plaintiff a six-week extension to attempt service on Defendant Jones [Doc. 13 p. 3]. After achieving service, Defendant Jones and Defendant RLJ "fail[ed] to plead or otherwise defend as provided by Rule 55(a) of the Federal Rules of Civil Procedure" [Doc. 19 p. 1].

Plaintiff, therefore, applied for entry of default judgment against each Defendant, and the Clerk of Court entered default against Defendant Robert Jones on April 17, 2023 [Doc. 20] and against Defendant RLJ Industries on March 31, 2024 [Doc. 25]. Plaintiff subsequently moved for entry of default judgment, but the Clerk denied the request for failure to meet "its burden of showing plaintiff is entitled to judgment for a sum certain" [Doc. 28 p. 4].

On August 20, 2024, Judge Varlan entered a Show Cause Order, directing Plaintiff to show cause as to why its claims should not be dismissed for failure to again seek default judgment [Doc. 29]. On September 24, 2024, Plaintiff moved for default judgment a second time [Doc. 33].

Judge Varlan granted in part and denied in part Plaintiff's motion [Doc. 35]. He found Plaintiff sufficiently alleged a claim for a violation of the Lanham Act, the Tennessee Trademark Act of 2000, the Tennessee Consumer Protections Act, tortious interference with business relations, interference with prospective economic advantage, and conversion, and he entered default judgment for those claims [*Id.* at 6–16]. He did not find, however, that Plaintiff was entitled to default judgment on the claim of tortious interference with contracts [*Id.* at 13–14].

Plaintiff sought damages, attorney's fees, and costs [*Id.* at 17]. At that time, Judge Varlan denied without prejudice Plaintiff's request for damages, attorney's fees, and costs due to lack of

2

sufficient documentation and evidence, and he ordered Plaintiff to renew its motion with supporting documentation [*Id.* at 23].

Plaintiff now seeks for the Court to award it $7,911.00 in attorney's fees, $1,350.07 in costs, and damages totaling $129,727.10 [Doc. 36 p. 3]. In support of this request, Plaintiff submits the Declaration of Philip Winsor, CPA ("Mr. Winsor"), along a copy of calculations for damages and an invoice for Mr. Winsor's services [Doc. 37], and the Declaration of Adam Strachn, Esq. ("Attorney Strachn") with copies of Plaintiff's counsel expense report [Doc. 38].

## II.   ANALYSIS

In his renewed motion, Plaintiff seeks damages, attorney's fees, and costs. As Judge Varlan explained:

> Although the Court must take as true the factual allegations regarding liability in the Complaint, Plaintiff must prove the appropriate amount of damages. *Bogard v. Nat'l Credit Consultants*, No. 1:12 CV 2509, 2013 WL 2209154, at *3 (N.D. Ohio May 20, 2013). In determining damages, "[t]he Court may rely on affidavits [and other materials] submitted by the plaintiff . . . without the need for a hearing." *Dirs. of the Ohio Conf. of Plasterers & Cement Masons Combined Funds, Inc. v. Akron Insulation & Supply, Inc.*, No. 5:16-CV-1674, 2018 WL 2129613, at *5 (N.D. Ohio May 8, 2018).

[Doc. 35 p. 17].

### A.   Compensatory Damages

Plaintiff seeks compensatory damages in the amount of $129,727.10, and he requests these damages be trebled pursuant to 15 U.S.C. § 1117(a), Tenn. Code Ann. § 47-25-514, and/or Tenn. Code Ann. § 437-50-109 [Doc. 33 p. 1]. In support of this request, Plaintiff submits the Declaration of Mr. Winsor [Doc. 37]. Mr. Winsor is a licensed Certified Public Accountant ("CPA") and "provided CPA services to Plaintiff . . . before, during, and after Defendant Robert Jones ('Jones') worked for Plaintiff" [Doc. 37 p. 1]. Mr. Winsor identified the following damages: lost income, unpaid invoices, accountant's fees, credit card expenses, and redirected payments [*Id.* at 2–3].

3

*Lost Income.* For lost income, Mr. Winsor calculated "that Plaintiff had a direct loss of $98,360.00 when comparing the 41 days in which [Defendant] Jones worked for Plaintiff to the 41 days immediately after [Defendant] Jones left Plaintiff" [*Id.* at 1–2]. Mr. Winsor explains that "the Total Brokerage Income for the 41 days in which [Defendant Jones] was actively employed by plaintiff was $141,240.00" [*Id.* at 2]. He notes that "[Defendant] Jones' last day was July 1 and the following 41 days had a Total Brokerage Income of $42,880.00" and "[t]he difference between these two amounts is $98,360.00" [*Id.*]. In his professional opinion, Mr. Winsor states that "the loss can only be attributable to the actions of [Defendant] Jones and, by extension, Defendant RLJ Industries" [*Id.*]. He explains that "the Total Brokerage Income for May 20-June 30, 2022 was a typical amount of income plaintiff could expect for any 41 day period," but that "the Total Brokerage Income for July 1-August 11, 2022 was not typical and was a marked decrease from the normal amount of brokerage income for Plaintiff" [*Id.*]. Mr. Winsor was unable to identify "other material changes . . . in plaintiff's financials that could account for such a drastic change in income" [*Id.*]. Mr. Winsor maintains that "it is [his] professional opinion that the $98,360.00 loss of income is due to income which was inappropriately directed to [Defendant] Jones and RLJ Industries, along with the consequences of [Defendant] Jones' actions as set forth in the Complaint" [*Id.*].

*Unpaid Invoices.* Plaintiff reflects that "[t]he affidavit of Philip Winsor, CPA shows a Accounts Receivable Detailed Aging Summary showing total unpaid invoices of $8,000" [Doc. 36 p. 2]. Plaintiff notes that "[t]his also notes the date the invoice was generated along with the invoice number and the total amount per invoice" [*Id.*].

*Credit Card Charges*. Mr. Winsor "included credit card charges of $1,642.10 which were advanced to hire trucks" [Doc. 37 p. 3]. He explains that "[t]hese funds were not reimbursed to Plaintiff because payment was instead rendered to [Defendant] Jones instead of Plaintiff" [*Id.*].

*Redirected Payments*. Plaintiff states that "[t]he Affidavit . . . identifies seven (7) invoices for brokerage services which the respective client paid to [Defendant] Jones and/or [Defendant] RLJ Industries, not to Plaintiff" [Doc. 36 p. 3]. Plaintiff reflects that "[t]hese invoices also include the canceled checks for funds remitted to the trucking companies which total $6,725.00" [*Id.*].

*Accountant's Fees.* Plaintiff reflects that Mr. Winsor's services cost "$12,500 for charges rendered for the five (5) weeks immediately after [Defendant] Jones left Plaintiff's employ" [*Id.*]. Plaintiff includes "an additional invoice related to the time spent detailing the information requested in the Court's Memorandum Order and Opinion totaling $2,500.00," for a "total amount of accounting fees . . . [of] $15,000" [*Id.*].

Judge Varlan previously explained:

> The Lanham Act, 15 U.S.C. § 1117(a), states that plaintiffs "shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." If the court finds that the amount of recovery from profits is inadequate or excessive, "the court may in its discretion enter judgment for such sum as the court shall find to be just." 15 U.S.C. § 1117(a). This discretion includes the possibility of awarding "any sum above the amount found as actual damages, not exceeding three times such amount." *Id.* Under the TCPA, the plaintiff is entitled to actual damages, and the court may award treble damages. Tenn. Code Ann. § 47-18-109(a).
>
> When plaintiff seeks lost profit from defendants, "it is not the plaintiff's burden to prove the [defendants'] profits with exactness." *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 605 (6th Cir. 1991). Rather, the plaintiff "need only show that its damages calculation is a fair and reasonable approximation of its lost profits." *Breeze Smoke LLC v. Speed Wholesale, Inc.*, No. 2:25-CV-10184, 2025 WL 2269785, at *11 (E.D. Mich. Aug. 8, 2025) (citation omitted).

[Doc. 35 pp. 19–20].[2] Still, "[a] plaintiff must prove compensatory damages to a reasonable degree of certainty by a preponderance of the evidence." *Exec. Corp. v. Oisoon, LLC*, No. 3:16-CV-00898, 2017 WL 4310113, at *7 (M.D. Tenn. Sept. 28, 2017) (citing *Anderson v. Wade*, 33 F. App'x 750, 756 (6th Cir. 2002)).

Based on the information provided in Plaintiff's Renewed Motion for Damages [Doc. 36] and its submitted affidavit [Doc. 37], the undersigned finds that Plaintiff has not shown that its suggested figure for "lost profit" is a "fair and reasonable approximation." *Breeze Smoke LLC*, 2025 WL 2269785, at *11. Mr. Winsor arrives at his lost profit calculation by comparing profits of the 41-day period that Defendant Jones worked for Plaintiff with the 41-day period that followed and subtracting the difference. His conclusion that the difference in profits "is due to income which was inappropriately directed to [Defendant] Jones and RLJ Industries, along with the consequences of [Defendant] Jones' actions as set forth in the Complaint" is conclusory and not sufficiently supported by the data provided. *See Systematic Power Sols., LLC v. Fullriver Battery Mfg. Co., LTD.*, No. 3:19-CV-277, 2023 WL 6518861, at *17 (E.D. Tenn. Aug. 18, 2013) (denying lost profits where there was a lack of "sufficient testimony or any relevant data"), *report and recommendation adopted*, No. 3:19-CV-277, 2023 WL 5938187 (E.D. Tenn. Sept. 12, 2023). "[D]amages are not permitted which are remote and speculative in nature." *Broan Mfg. Co., Inc. v. Associated Distribs., Inc.*, 923 F.2d 1232, 1235 (6th Cir. 1991) (internal quotation marks and citation omitted).

The undersigned finds a similar problem persists with Plaintiff's claim of redirected payments. While Plaintiff states that the affidavit identifies seven invoices that were paid to

---

[2] Judge Varlan previously found it appropriate to address damages under the Lanham Act and Trademark Act, as well as the TCPA in light of "plaintiff request[ing] that all his compensatory damages be trebled pursuant to 15 U.S.C. § 1117(a) and Tennessee Code Annotated § 47-25-514" [Doc. 35 p. 19 n.7].

6

Defendant Jones and/or Defendant RLJ Industries instead of Plaintiff, Mr. Winsor does not address these invoices in his Declaration [*See* Doc. 37]. Rather, the only reference to these redirected payments is in a letter from Mr. Winsor to Plaintiff's counsel in which Mr. Winsor states that he includes "[c]opies of invoices not paid, along with canceled checks paid to the trucks that hauled those loads" [*Id.* at 11]. While the undersigned accepts the proposition that Plaintiff lost business due to Defendants' misconduct, on the record before the Court, Plaintiff has not met its burden by a preponderance of the evidence that these invoices are tied to Defendants' conduct.

As for the unpaid invoices, the undersigned again finds that Plaintiff has not met its burden. Plaintiff notes that Mr. Winsor included an "Accounts Receivable Detailed Aging Summary showing total unpaid invoices of $8,000" and that the summary "notes the date the invoice was generated along with the invoice number and the total amount per invoice" [Doc. 36 p. 2]. Yet, Plaintiff has not connected these unpaid invoices with Defendants' conduct in this case. And Mr. Winsor does not address them in his declaration. Accordingly, the undersigned recommends the Court not award damages for the unpaid invoices.

The undersigned finds, however, that Plaintiff has met its burden for the credit card charges and for the accountant's fees. Mr. Winsor explains that the $1,642.10 in credit card charges "were not reimbursed to Plaintiff because payment was instead rendered to [Defendant] Jones instead of Plaintiff" [Doc. 37 ¶ 13]. And Mr. Winsor has attached invoices reflecting the advance credit card payments that were not reimbursed [*Id.* at 8–10]. As for Mr. Winsor's fees, Plaintiff explains that it cost "$12,500 for services rendered for the five (5) weeks immediately after [Defendant] Jones left Plaintiff's employ," as well as an additional $2,500 "related to the time spent detailing the information requested in the Court's Memorandum Order and Opinion" [Doc. 36 p. 3]. Mr. Winsor has attached the invoices reflecting these charges [Doc. 37 pp. 13–14]. The undersigned

7

accordingly recommends that the Court award damages for the $1,642.10 in credit card charges and $15,000 for the accountant services.

The undersigned, however, declines to treble Plaintiff's damages. Damages can be trebled pursuant to "the principles of equity," which involves consideration of several factors including "the defendant's intent to deceive, whether sales were diverted, [and] the adequacy of other remedies." *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 343 (6th Cir. 2010). Plaintiff has presented no argument as to why damages should be trebled.

### B. Attorney's Fees[3]

In assessing whether attorney's fees are reasonable, courts often employ the "lodestar method," which is "the proven number of hours reasonably expended on the case by the attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). The reasonableness of the hours and the rate is determined by considering twelve factors:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys;

---

[3] Plaintiff does not specify under what authority it is entitled to attorney's fees, and the District Judge could and should deny the request on that basis. But the Lanham Act authorizes an award of "reasonable attorney fees to the prevailing party" in exceptional cases. 15 U.S.C. § 1117(a). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Evoqua Water Tech., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 235 (6th Cir. 2019) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). Courts have denied a request for attorney's fees and costs where, like here, the plaintiff did not make an argument for why the case is an exceptional one. *See Neal Techs., Inc. v. Mike's Bulletproof Diesel*, No. 121CV01023STAJAY, 2021 WL 1082536, at *2 (W.D. Tenn. Mar. 18, 2021) (granting default judgment and denying request for attorney's fees under the Lanham Act where the plaintiff did "not argue why this is an exceptional case or why an award of fees is warranted"). The undersigned assesses the reasonableness of the request herein in the event the District Judge decides to award attorney's fees and costs.

(10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. at 415–16 (cleaned up). "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

With respect to the hourly rate requested, Plaintiff's counsel seeks $300 per hour. Plaintiff's counsel has been practicing since 2015 and has "experience in both state and federal courts, administrative hearings and proceedings, arbitrations, and mediations" [Doc. 38 pp. 2–3]. The undersigned is familiar with the prevailing rate for attorneys practicing in the Eastern District of Tennessee and finds that the requested hourly rate is appropriate. *See Systematic Power Sols., LLC*, 2023 WL 6518861, at *24 (noting that "$355 per hour is relevantly high" for the Eastern District of Tennessee, but nevertheless awarding that rate for the most experienced attorney in a TCPA and Lanham Act action on default judgment because the junior associate's billable time brought the "weighted average hourly rate" down to $293.59); *BKB Props. v. SunTrust Bank*, No. 3:08-CV-00529, 2010 WL 200750, at *8 (M.D. Tenn. Jan. 13, 2010) (finding an hourly rate of $380 and $330 reasonable in an action for breach of contract, fraud, and violation of the TCPA), *aff'd sub nom.*, 453 F. App'x 582 (6th Cir. 2011). If the District Judge decides to award attorney's fees, the undersigned therefore recommends that Plaintiff be awarded attorney's fees in the total amount of $7,911.00.

Plaintiff states that his counsel incurred $1,350.07 in legal costs [Doc. 36 p. 1]. If the District Judge decides to award costs, the undersigned recommends that the legal costs in the amount of $1,350.07 be awarded. *Knisley v. Johnson*, No. 3:21-CV-420, 2022 WL 17718637, at *9 (E.D. Tenn. July 22, 2022) (recommending the plaintiff be awarded costs for "filing fees,

9

copies, service of process, and parking"), *report and recommendation adopted*, No. 3:21-CV-420, 2022 WL 17718636 (E.D. Tenn. Aug. 10, 2022).

### III.     CONCLUSION

For the reasons explained above, the undersigned **RECOMMENDS**[4] that the District Judge **GRANT IN PART AND DENY IN PART** Plaintiff's request for attorney's fees and damages [**Doc. 44**].

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

---

[4]     Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

10